49 So.2d 60 (1950)
GOODMAN
v.
HILLYER, DEUTSCH, EDWARDS, Inc.
No. 7546.
Court of Appeal of Louisiana, Second Circuit.
November 3, 1950.
Rehearing Denied December 14, 1950.
John P. Godfrey, Many, for appellant.
Thompson, Lawes, Cavanaugh & Hickman, Lake Charles, for appellee.
TALIAFERRO, Judge.
This is a workmen's compensation case in which there is tendered for decision a *61 legal question only. All questions of fact have been put beyond controversy by agreement of counsel embodied in stipulations in Court. So far as our research has extended, and it has been extensive, we have found no case precisely on all fours with this one; and counsel of both sides concede this to be true. There are several cases that involve unearned wages by an injured employee, but there seems to be none wherein it was admitted that the wages paid for lighter work were earned.
Plaintiff was employed by the defendant as log loader and hauler, the duties of which required the exercise of considerable physical effort. On May 10, 1946, he suffered an accident that resulted in total disability to perform the duties of his employment. He immediately underwent an operation and performed no work until August 17, 1947, when he was placed by his employer on lighter duties, that of log scaler. The operation was not successful and he was forced to submit to another one on February 14, 1948, and was unable therefrom to perform any work until April 4, 1949, when, again, he was given the job of log scaler, and continued to work as such until December 31, 1949, when the light work became unavailable and he has not worked any since then. During these two periods of total disability, from the immediate effect of the operations, the employer paid to him compensation at the rate of $20 per week. While he was doing the duties of log scaler his remuneration was equal to or exceeded that which he was paid as log loader and hauler. It is admitted in the stipulations that as log scaler, plaintiff earned the amounts paid him for services "well performed", although accompanied by some pain.
It is also admitted that as of the date of trial, March 6, 1950, he was totally disabled to perform work of the character he was performing when injured, and that such disability was the direct result of the original accident. No compensation or wages have been paid to him since December 31, 1949.
In this suit plaintiff seeks judgment against defendant for compensation during the period of total disability, not exceeding 400 weeks, from March 10, 1946, at the rate of $20 per week, less payments made, there being 125 of them. It follows that plaintiff's position is: that as he earned the wages paid him during the periods he was performing lighter work, no credit therefor should be allowed defendant against its liability to him for compensation, it being conceded that for these periods he was not physically able to do the work of his regular employment.
On the other hand, defendant contends that, whether the wages were earned or unearned, to the extent of $20 per week, for each week such wages exceeded that amount, while so performing the lighter duties, credit should be allowed it against its liability on compensation account.
The difference in positions of the parties reflects the legal question tendered.
The lower court agreed with the defendant and rendered judgment accordingly, from which plaintiff prosecutes appeal.
It is settled beyond question by the courts of this state that where the employer pays to an injured employee wages which are in the nature of a gratuity or beneficence, such payments will be construed to be a discharge of liability for compensation and to have produced the same legal effect as though they had been so denominated. But here, we have a case where, admittedly, the wages paid were earned by services well performed.
Many times have questions similar to that with which we are now confronted been considered by the Supreme Court and courts of appeal of this state, and we have to confess that, as best we can understand them, considerable confusion has resulted. These cases generally have to do with the question of prescription and the effect disguised payments made to the injured employee has upon this question; and with the question of prematurity of action while such payments are being made.
To begin with, plaintiff's position is wholly inequitable. If defendant's position is rejected, plaintiff will be in the fortunate position of being paid compensation for a period his employer was paying *62 him an earned wage much larger than $20 per week. This does not impress us as being just.
In the case of Daigle v. Higgins Industries, Inc., et al., 29 So.2d 374, 379, decided by the Orleans Court of Appeal, relied upon by the district court, and now by the appellee, it was held that under facts similar to those existing in the present case, credit was due the employer for the period the injured employee was paid wages, whether earned or not. We quote paragraphs from that opinion with which we are in perfect accord, viz.:
"We do not believe that it was the intention of the framers of the workmen's compensation statute, that the act should be so construed as to permit a totally and permanently disabled workman to return to work for the employer in whose employ he was at the time his injuries occurred and to earn substantial wages, and at the same time collect compensation from his employer.
"We believe that it was the purpose of the act to assure an injured employee, who could no longer earn his living, that he would not become a public charge nor a burden upon his family, and that at least for 400 weeks, or nearly 8 years, he should be provided for by the employer for whom he was working at the time of sustaining his injuries. It seems to us that it would be absurd to say that if an employee should be injured he should have the right to obtain a judgment for compensation for 400 weeks, and if able to earn a substantial livelihood from the same employer, at the same time contend that he is disabled from doing any work of a reasonable character, meanwhile holding the compensation judgment over his employer's head.
"In short, we take the view that if, during that period for which compensation is due, the injured workman can earn a substantial living by working for the same employer at wages approximating those earned before the accident, the weeks for which he should earn such wages should be deducted from the 400 weeks during which compensation might otherwise be due to him."
The enlightening and exhaustive opinion in that case cites and analyzes many Louisiana cases.
Chief Justice O'Niell has provided the Bench and Bar with a like opinion in Thornton v. E. I. Du Pont De Nemours & Company, 207 La. 239, 21 So.2d 46, 51. He therein cites and discusses many cases that have some bearing upon the issue before us, but the decision in that case is not decisive of the present one. In the course of the opinion, it is said:
"In the Carlino case, [Carlino v. U. S. Fidelity & Guaranty Co.], on rehearing, 196 La. [400] at page 415, 199 So. [228] at page 232, we referred to the decision in the Ulmer case [Ulmer v. E. I. Du Pont De Nemours & Co., La.App., 190 So. 175] with approval, so far as it maintained that the injured employee could not collect compensation for the loss of his wage-earning capacity for the weeks for which he was paid his wages in full, because, for those weeks, there was no right of action for compensation.
"So far as the court of appeal, in the Ulmer case, held that the suit for compensation subsequent to December 28, 1938, was premature, the case is distinguished from the present case by the fact that in the Ulmer case the employee was receiving not his wagesbut the maximum compensation that was due him at the time when he filed his suit; whereas in the present case the plaintiff was receiving, not compensation, but his wages in full, at the time when the suit was filed and for six days thereafter."
The fact that plaintiff was given lighter work and was paid for his services a wage equal to or in excess of that being earned by him when injured, reflects two things, to wit: that defendant recognized he had lost earning power as a log hauler and loader; and, that it, because of his many years of faithful service, desired to deal with him in a magnanimous spirit by continuing him on the payroll, regardless of his reduced earning power.
The Orleans Court of Appeal, in Arbo v. Maryland Casualty Company, 29 So.2d 380, again considered a compensation case wherein the facts are quite similar to the *63 Daigle case, supra, and to those in the case at bar. The Daigle case was referred to as providing a correct rule to be followed in the Arbo case, in which it was held, as disclosed from the syllabi: "Where injured employee, after his injury, was re-employed by employer at a substantial wage for 30 weeks, compensation insurer was entitled to a credit of $20 for each of the weeks worked by claimant for former employer subsequent to the accident. Act No. 20 of 1914."
In that case the employee, after being injured, was re-employed and paid wages "comparable" in amount to those earned before the accident. It is not said in the opinion whether the wages under the re-employment were earned or not.
Again, the same court had before it another compensation case, Bailey v. Maryland Casualty Company, 34 So.2d 354. In that case defendant was allowed credit for wages paid the plaintiff by its assured, since it was shown that the duties performed by the employee subsequent to the accident, were lighter and were performed to the satisfaction of the employer.
In addition to the Daigle case, and the other two above cited, appellee relies upon Perkins v. Brown Paper Mill Company, Inc., 43 So.2d 501, decided by this Court. In that case the plaintiff underwent two hernial operations. He was paid compensation during the periods of convalescence after each operation, and after each recovery he returned to work and did perform work of a lighter character than that being performed when he was injured, for which he was paid wages in excess of those paid him prior to being injured. It was held that in determining the amount of compensation due him, credit should be given for compensation for the weeks he was discharging the lighter work. It is not said in the opinion whether wages paid for the lighter work were earned or not.
Plaintiff relies upon the Supreme Court case of Holliday v. Martin Veneer Company, 206 La. 897, 20 So.2d 173. The question involved in the present case was not passed upon in that case, because the Court found that plaintiff in his petition admitted that his employer was entitled to be credited with compensation that had accrued during the period of his re-employment by way of set-off against wages received during such period. It is not said in the opinion whether the wages paid for doing the lighter work were earned or unearned.
In the very recent case of D'Antoni v. Employers' Liability Assurance Corporation, Ltd., 213 La. 67, 34 So.2d 378, 380, is it said: "The jurisprudence relative to the prosecution by injured employees of claims for further compensation, where they have returned to the service of their former employer in the same or a different capacity, has been settled by this Court in Carlino v. United States Fidelity and Guaranty Co., 196 La. 400, 199 So. 228, and Thornton v. E. I. DuPont de Nemours & Co., 207 La. 239, 21 So.2d 46. If the employee is actually earning the wages paid him, his suit cannot be dismissed on a plea of prematurity forasmuch as he is not receiving compensation. Such is the case here according to Atkins' testimony. Conversely, if it is shown on the trial of the plea that the wages being paid the employee are in reality a gratuity and not for the performance of work, then the action will be dismissed as premature for, in such instance, the payment of the wage is the equivalent to the payment of compensation."
The meaning the Court intended to convey by this quoted portion of its opinion is made clear. Prescription of the right to sue for compensation is suspended or interrupted so long as compensation eo nomine or by disguise is being paid. It is not suspended or interrupted while the injured employee is actually earning the wages paid to him.
In the cited case, a plea of prematurity was adjudged. The Court held, as it has been frequently held, that so long as the injured employee was actually earning the wages paid to him, his suit for compensation cannot be dismissed on a plea of prematurity, since he is not being paid compensation. It did not hold therein, nor elsewhere, so far as we can learn, that *64 the injured employee can collect compensation for the period or periods he earns the wages paid him by his employer.
While the Workmen's Compensation Law, Act No. 20 of 1914, as amended, should be and is being construed liberally in favor of the employee whose earning capacity has been reduced or wholly destroyed by accidental injury, to the end that the humane philosophy motivating its enactment be enforced, yet it was never intended that it should be so construed as to work inequities or injustice upon any one; and that will happen in this case should defendant's contention be rejected. Regardless of the admitted fact that the wages paid plaintiff were earned while doing lighter work, the lighter work that was given him and the wages paid him were consequences that stemmed from his physical condition caused by an accident while in defendant's employ.
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.