416 So.2d 358 (1982)
Posey BLOUNT, widow of Johnnie Blount, Jr., Individually and for the Use and Benefit of Her Minor Child, Patricia BLOUNT
v.
COOPER STEVEDORING CO., INC., Interocean Stevedoring, Inc., and Employers National Insurance Company.
No. 12978.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied July 16, 1982.
*359 Claude D. Vasser, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellant.
J. Stuart Douglass, New Orleans, for plaintiff-appellee.
Before REDMANN, SCHOTT and KLEES, JJ.
KLEES, Judge.
Johnnie Blount, Jr., the deceased, was a longshoreman who held two separate jobs, one with Cooper Stevedoring, Inc., and the other with Interocean Stevedoring, Inc. On February 28, 1979 he began his workday at approximately 8:00 P.M. At this time he was working for Cooper Stevedoring and he and his partner, Johnnie L. Squire, unloaded 250 sacks of coffee from a container. After unloading the coffee sacks he and his partner were instructed to clean out a truck and to begin loading some flour onto the truck. While sweeping out the truck, Mr. Blount complained to his partner that he didn't feel good. He took a Rolaid tablet given to him by another worker and thereafter obtained a slip from the office to leave so that he could be checked by a doctor.
Instead of going directly to the company doctor, Mr. Blount went home to rest and at approximately 4:00 P.M., he visited his personal physician Dr. Saeed Ahmed. Dr. Ahmed stated that Mr. Blount complained of pains in the lower chest and upper abdomen and of belching. Dr. Ahmed ordered an EKG and stated that the results of the test did not lead him to think that Mr. Blount was having or had a heart attack. Nonetheless, he prescribed nitroglycerin tablets for Mr. Blount and allowed him to leave without further instructions.
Later that evening at 6:00 P.M., Mr. Blount reported for work with Interocean Stevedoring Inc. His duties with Interocean, Inc., on this evening were to act as a "hook-on man" which is considered to be light duty for a longshoreman.
Mr. Blount and Mr. Squire worked as "hook-up men" until 12:00 midnight. At this time the men began their lunch break. They returned for duty at 1:00 A.M., but were instructed to wait until some other men were finished performing another task. While seated and waiting for the other men Mr. Squire noticed that Mr. Blount was very quiet. When the other men returned Mr. Squire touched Mr. Blount on the arm and said "come on, we're getting ready to go back to work". It was at this point that Mr. Blount was determined to be dead.
An autopsy was performed and it was discovered that Mr. Blount's death was caused by a myocardial infarction. Dr. Welsh who performed the autopsy testified that the onset of the heart attack was within 12-18 hours before the death. This would place the onset of the attack at or near the time the deceased complained that he was feeling ill, and while he was employed by Cooper Stevedoring Company, Inc.
Suit for Worker's Compensation benefits was then filed against both employers. Immediately prior to the trial, Interocean and its insurer settled with the plaintiffs for $46,800 and the case proceeded to trial. Upon its conclusion, the trial judge then entered judgment against Cooper Stevedoring *360 for one-half of the maximum death benefits and dismissed the third party claims of the defendants against each other. The trial judge concluded that Cooper and Interocean were liable in solido for compensation benefit and since Interocean had settled with the plaintiffs they were only entitled to one-half of the weekly death benefits in the judgment against Cooper.
Our courts have held without hesitation that heart attack is a compensable accident within the meaning of the La. Workmen's Compensation Law. Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). The only pertinent factor is whether in fact, the heart attack occurred on the job or was caused or precipitated by the usual and customary actions, executions or other factors directly connected with the employment.
The fact that the deceased suffered a heart attack while on the job is not disputed. The appellant, however, argues that the deceased was not employed by Cooper when his attack occurred and therefore Cooper should not be required to pay death benefits.
The trial judge concluded that the deceased's attack occurred while he was employed by Cooper and Interocean.
Dr. Welsh who performed the autopsy on the deceased testified that there was evidence of a myocardial infarction and that he could not have seen such evidence if the deceased had died within eight hours after his attack began. He then testified that the onset of the heart attack began 12-18 hours before Mr. Blount's death. Dr. Phillips, an expert in Cardiology substantiated Dr. Welsh's findings.
The issue presented on appeal is whether the deceased's employment with Interocean was an intervening cause of his death which relieves Cooper from its duty in the payment of death benefits.
The appellant argues that the deceased's work with Interocean was an intervening cause of Mr. Blount's death and as such Cooper is not liable for payment of death benefits. In support of its claim the appellant cites the following language from Haughton v. Fireman's Fund American Insurance Companies, 355 So.2d 927 (La.1978).
If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident. But here there is no evidence of an intervening cause. Nothing happened to Haughton after the accident, except his failure to recover. He did not suffer a new accident or disease. The disease he had when the accident occurred contributed to the injury itself.
Nonetheless, Haughton, supra, goes on to say that:
When there is an accident and a resulting disability without any intervening cause, it is presumed that the accident caused the disability. This simple guide plainly stated in Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969) we affirmed in Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973) and reaffirmed in Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La.1974). The presumption is not irrebuttable but its effect is to shift the burden of proof to the defendant.
Defendants here were afforded the opportunity to present evidence concerning what they considered an intervening cause, that of the decedents work and ultimate death on the premises of the job at Interocean. Nonetheless, the trial court after considering this evidence, concluded that both jobs contributed to Mr. Blount's death and we can find no manifest error in his findings.
An employer is liable for workmen's compensation when the initial injury is aggravated by medical complications or a subsequent off the job injury, whether due to improper medical treatment or otherwise if the complications of the second accident are causally related to the on-the-job accident. Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2nd Cir. 1977), writ denied, 345 So.2d 902 (La.1977), writ denied, 345 So.2d 903 (La.1977); Carter v. Rockwood Ins. Co., 341 So.2d 595, and Deville v. Townsend Bros. Const. Co., 284 So.2d 110 (La. *361 App.3rd Cir. 1973) writ refused, 286 So.2d 367 (La.1973).
We have additionally considered the recent decision of our Supreme Court in Carter v. Avondale Shipyards, Inc., on rehearing No. 80-C-2903, 415 So.2d 174, May 17, 1982, wherein the court refused to require contribution from a former employer whose working conditions might have contributed to the occupational disease which ultimately disables the workers. Nonetheless we distinguish Carter v. Avondale Shipyards, Inc., supra from the instant case, in that the decedent Johnny Blount, Jr. was employed by both Cooper and Interocean at the time of his demise.
While on the job with Cooper the decedent's attack began to manifest itself. His physician did not diagnose the attack and he did not advise Mr. Blount not to return to work. As a result the decedent returned to work in the early evening and thereby aggravated his condition causing him to sustain a massive myocardial infarction resulting in his death. While it is true that the decedent had an 85% chance of survival if he had not gone to work, the massive attack and his subsequent death were direct and foreseeable consequences of the onset of his attack while with Cooper. Since the massive attack was causally related to the onset of the attack while the decedent was on the job with Cooper it does not matter whether the decedent's condition was aggravated by his own drive to support his family, his ignorance of his condition or the lack of proper medical advice and/or treatment. The causal connection between the onset of the decedent's heart problem while he was employed with Cooper and the massive attack suffered by him 12-18 hours later is sufficient to hold Cooper and Interocean equally liable for payment of death benefits since the decedent's employment with both contributed to his demise.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs to be borne by appellant.
AFFIRMED.