161 So.2d 113 (1964)
Merdic ANDRUS, Plaintiff-Appellant,
v.
SECURITY INSURANCE COMPANY OF NEW HAVEN et al., Defendants-Appellees, (Great American Insurance Company, Intervenor-Appellant).
No. 1064.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1964.
Rehearings Denied March 11, 1964.
Writ Refused May 4, 1964.
*114 Tate & Tate, by Paul C. Tate, Mamou, for plaintiff-appellant.
Lewis & Lewis, by Seth Lewis, Opelousas, for intervenor-appellee.
Voorhies, Labbe, Fontenot, Leonard & McGlasson, by Donald Labbe, Lafayette, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
TATE, Judge.
On July 26, 1961, while at work for his employer, the plaintiff Andrus was injured by a truck belonging to another firm. As a result of this accident, the plaintiff filed two suits: the present suit in tort against third persons responsible for operation of the truck; and also, a claim for workmen's compensation benefits against his own employer's insurer, Andrus v. Great American Insurance Co., La.App. 3 Cir., 161 So.2d 109. These two suits were consolidated for trial and on appeal.
In the present tort suit, Andrus sues the employer and the insurer of the truck driver who backed onto his right foot as he knelt. The negligence of the driver is unquestioned, and the defendants do not appeal from adverse judgment holding them liable in the sum of nearly three thousand dollars.
The other parties to the suit, however, have taken appeals questioning as insufficient the amount of the award in this tort suit. These appellants are the plaintiff Andrus and also his employer's compensation insurer ("Great American", the defendant in the cited compensation suit), which intervened in the present suit to recover workmen's compensation benefits paid and to be paid to the claimant on account of the accident caused by the negligence of the present defendants' driver.
The principal question of this appeal concerns whether the trial court properly limited the award against the third person tortfeasor because the employer's compensation carrier failed or refused to afford the plaintiff-employee reasonable medical treatment which should have minimized the plaintiff's disability.
In the companion compensation suit against Great American, cited above, we have affirmed an award in plaintiff's favor holding him to be entitled to workmen's compensation benefits by reason of total and permanent disability.
The medical evidence in such compensation suit is identical to that in the present *115 suit, with an important exception, namely, the deposition of Dr. Ambrister, an orthopedist (Exhibit PC-1 in the companion compensation suit, Andrus v. Great American Insurance Co., 161 So.2d 109). We have more fully discussed the plaintiff's injuries and disabilities in the companion compensation suit, cited above.
Although the plaintiff was still disabled at the time of the trial and was therefore entitled to a larger award on the basis of such continued disability, the trial court based the tort award of $2,743.08 herein on what the plaintiff should reasonably have received if he had received timely the physiotherapy, which the evidence in the tort suit indicates should have totally ended the disability within six months, had the physiotherapy been afforded as recommended in the early stages of the disability.
The trial court based this reduction of damages otherwise awardable, upon the jurisprudence holding that, where an injured person unreasonably refuses to minimize his damages by accepting non-dangerous and customary medical treatment which is recommended by his attending physicians, the damages against a tortfeasor may be limited to that which the injured person would have reasonably recovered if he had undergone the recommended treatment. Donovan v. New Orleans R. and Light Co., 132 La. 239, 61 So. 216, 48 L.R.A.,N.S., 109; Dark v. Brinkman, La.App. 3 Cir., 136 So.2d 463; Bowers v. Lumbermens Mutual Cas. Co., La.App. 2 Cir., 131 So.2d 70, certiorari denied.
The plaintiff contends that the evidence does not show that he himself unreasonably refused to minimize his injuries by receiving the treatment. In fact, he unsuccessfully sought this treatment from his attending physician, from the compensation insurer responsible for his compensation claim, and from Charity Hospital.
Although only $300 of medical treatment was needed, the claimant himself was not reasonably able to secure same under his impoverished circumstanceshe being the father of nine children in school, disabled, with mortgaged home, and enjoying a marginal existence at best even when fully employed. Nor could the treatments be secured in the town of the plaintiff's residence or from doctors acquainted with him, which further presented certain credit and transportation problems.
As noted in the Annotation, Duty of injured person to minimize tort damages by medical or surgical treatment, 48 A.L.R.2d 346 at 371:
"The fact that a medical treatment recommended to minimize the effect of personal injuries would have involved the injured person in unreasonable expense or effort has been recognized in a number of cases as at least a factor affecting the determination whether, in refusing to obtain or submit to the treatment, plaintiff acted as a reasonably prudent man.
"The Restatement of Torts § 918, Comment e, recognizes that the duty to seek or follow medical attention may be modified where an unreasonable expenditure of money or effort would be required to repair the hurt or prevent further harm."
Further, "The party who commits a wrong has the burden of establishing matters asserted by him in mitigation or reduction of the amount of damages. So the burden is on him to show that some of the consequences of the injury might have been avoided by proper efforts or acts of the injured party * * *." 25 C.J.S. Damages § 144 e, p. 791. News Pub. Co. v. S. B. Barrett Rubber Co., 13 La.App. 285, 127 So. 749. Cf., Bertrand v. Ducote, La.App. 3 Cir., 128 So.2d 809, syllabus 4.
Considering that the evidence shows not only that the plaintiff was a person of no financial means, but also of no great intelligence or social standing, we think that the evidence in the record does not preponderantly prove that the damages *116 awarded to the plaintiff should be reduced on any ground that he himself unreasonably failed to mitigate the damages by securing medical treatment, especially since he did in fact unsuccessfully attempt to secure medical assistance through the means reasonably available to a person of his station and means.
The defendants-appellees point out, however, that the claimant's injuries and disability were indeed prolonged by the failure of Great American, the employer's compensation insurer, to furnish reasonable medical services, which the evidence shows should have minimized the disability. See Andrus v. Great American Insurance Co., companion suit, 161 So.2d 109. Great American has intervened in the present suit to recover for compensation benefits paid to the claimant; and counsel points out that, if this tort-award is increased, then such increase will benefit, not the injured claimant, but only the intervening compensation insurer, the very party which could have mitigated the damages by affording reasonable medical services. (Under the compensation statutes, the claimant's tort recovery must first be apportioned to reimburse the employer's insurer for workmen's compensation benefits paid by it to the injured employee, LSA-R.S. 23:1101, 23:1103, 23:1162, subd. D.)
There is much force in this contention.
However, the Louisiana jurisprudence has consistently characterized the compensation-reimbursement rights of the employer as merely a right to share in the award which the injured employee is entitled to recover upon his own cause of action for his own personal injuries. As stated by our Supreme Court, in its most recent statement on the subject in Marquette Casualty Co. v. Brown, 235 La. 245, 103 So.2d 269, 271: "* * * [T]here is but one cause of action recognized for the recovery of damages resulting from a single tort. However, the right of redress against the tortfeasor has been extended by the provisions to the injured workman's employer, who is accorded a preferential right to recover, out of the judgment for damages which may be assessed against the tortfeasor, the amount of compensation he has paid or become obligated to pay to the injured employee."
Thus, for example, in Louisiana it has been held that the employer's own independent contributory negligence may not bar the employer's right to reimbursement from the tortfeasor of compensation paid to the injured employee, since the employer is merely enforcing the injured employee's cause of action. City of Shreveport v. Southwestern Gas & Elec. Co., 145 La. 680, 82 So. 785; Day v. National-U. S. Radiator Corp., La.App. 1 Cir., 117 So.2d 104, reversed on other grounds, 241 La. 288, 128 So.2d 660.
Based upon such jurisprudence, a majority of this court has determined that the damages to be awarded to the plaintiff for his personal injuries, cannot be reduced because of the compensation insurer's failure to afford the claimant reasonable medical services which should have mitigated the damages, even though we recognize that the effect of this ruling will benefit principally that same insurer by increasing the amount of compensation for which it is reimbursed through its intervention in the present tort suit.[1]
*117 On the other hand, the plaintiff-appellant argues that, even though the tortfeasor may not be exculpated from liability for full damages by reason thereof, nevertheless it is inequitable to reward Great American, the compensation insurer, through increasing its recovery on its intervention herein, since such increase in recovery is occasioned solely by the prolongation of disability resulting from Great American's failure to afford the claimant reasonable medical services as required by law. It is thus argued that the recovery of Great American alone should be limited and that the plaintiff-employee should receive the full tort recovery to which he is entitled, free and clear of any priority in apportionment (except up to the amount of the trial award) in favor of the intervenor-appellant.
The short answer to this interesting suggestion is that, under the unequivocal terms of the legislation which governs the court's action in the matter, the employer or his insurer is entitled to priority in payment from any tort recovery, of all compensation benefits "actually paid", before the claimant may receive any funds from such an award against a third person tortfeasor. LSA-R.S. 23:1103. The equity of this reimbursement under the present circumstances addresses itself to the legislature.
Before concluding on the point, however, it is fair to note that as eminent an authority as Professor Wex Malone has suggested that the Louisiana case (City of Shreveport v. Southwestern Gas & Elec. Co., 145 La. 680, 82 So. 785, 1919) holding that the employer's fault is immaterial to his reimbursement rights, is inconsistent with the underlying statutory purpose of indemnifying only blameless employers, as well as with the holdings in other states where the question has arisen. Malone, Louisiana Workmen's Compensation (1951), Section 367.
Quantum.
We have in the companion compensation suit already discussed the plaintiff's injuries.
However, although the tort and the companion compensation suit (Andrus v. Great American Insurance Company) were consolidated for appeal and also in part for trial, there is one very important difference between the medical evidence in the two suits insofar as the claimant's continued or residual disability.
The tort suit was first tried alone, since compensation was still being paid. The medical evidence at that time, about eighteen months after the accident, indicated that, with the arch support furnished, the plaintiff's condition was in the process of cure, and that the disability should be ended within a matter of months.
However, when the tort suit note of evidence was reopened six months later for purposes of consolidating it with the compensation suit trial (compensation payments having been terminated between the first and second tort trial), further medical evidence was introduced, including especially the deposition of Dr. Ambrister, concerning later medical examinations and treatment during the interval between the two trials. This later medical deposition, however, was introduced only in the compensation suit; it was correctly not admitted as evidence against the tortfeasor in the tort suit for certain procedural reasons, mainly lack of notice to present defendants. See Tr. p. 233 in record of companion suit.
It is these later examinations which show that, due to the persistence of the condition *118 over two years, it is far less likely that the plaintiff will substantially recover the use of his foot, than is indicated by the depositions and evidence applicable to the tort suit only.
Thus, we have the procedural situation where the evidence in the tort suit indicates less serious and less prolonged disability, than does the later and more complete evidence in the compensation suit. Nevertheless, we think that the award in this tort suit must be based upon the evidence contained therein, and the defendants-appellees cannot be bound by evidence introduced in the companion compensation suit alone, as to which they were not parties and had no opportunity to cross-examine or counter.
Thus, the medical evidence in the tort suit proper indicates that the plaintiff received somewhat painful crushing injuries of his foot, but which produced only a temporary disability of about two years to do heavy work or stand or walk for prolonged periods. However, according to the evidence, the plaintiff's disability otherwise causes him fairly little discomfort, if he avoids such activities, nor are his other (social and family, etc.) activities shown to be substantially limited by his disability to perform hard work. He does, however, suffer pain and swelling upon attempting to walk for any length, and during the period of temporary disability he is able to walk only with a limp.
We think that an award of five thousand dollars general damages for these personal injuries to be fair and appropriate under the circumstances. See, e. g.: O'Pry v. City of Opelousas, La.App. 3 Cir., 124 So.2d 333.
As to special damages, we find no error in the trial court's award of $793.08 past and estimated-future medical expenses, nor in its basing the loss of earnings upon the claimant's average monthly wages of $125 during the three years immediately preceding the accident. (The claimant was a low-paid construction worker, in which industry, employment is intermittent due to weather and business slowdown, etc.) This loss of wages over the two years of temporary disability thus amounts to three thousand dollars.
To recapitulate, the plaintiff is entitled to an award of $5000 general damages, plus $3,793.08 special damages, or a total award of $8,793.08.
For the foregoing reasons, the trial court judgment is amended so as to increase the award in favor of the claimant to eight thousand seven hundred ninety-three and 08/100 ($8,793.08) dollars with legal interest thereupon; and, as amended, the judgment is affirmed in all other respects, including its recognition of the right of the Great American Insurance Company, intervenor-appellant, to receive therefrom, as a priority claim, all compensation benefits paid and to be paid the injured plaintiff. All costs of this appeal are to be paid by the defendants-appellees.
Amended and affirmed.

On Applications for Rehearing.
En Banc. Rehearings denied.
NOTES
[1] The writer of this opinion initially felt that, although the employer's right to recover may not be barred by his fault, nevertheless the award of damages in each individual case is an attempt to do justice under the peculiar circumstances of each case, as to which the trial court has large discretion. LSA-C.C. Art. 1934 (3); Gaspard v. LeMaire, La., 158 So.2d 149. Under the peculiar facts of this case, the tort award will almost certainly be paid to the compensation insurer in reimbursement for compensation paid. This is the same compensation insurer which failed or refused to perform its statutory duty of affording the claimant reasonable medical services, as a result of which the claimant's injuries and disability were substantially prolonged. Under all these circumstances, the writer did not feel that the trial court had abused its discretion by limiting recovery herein to damages awardable if the medical treatment had been furnished during the early stages of the disability, at which time (but not now, due to the condition not being attended to for so long) it should have ended the disability within a reasonably short time. However, the writer yielded to the views of this court's majority.